**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**ANGEL LASHELL EVANS,**

          **Plaintiff,**

v.

          **18-CV-6758-HKS**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security,**

          **Defendant.**

## DECISION AND ORDER

Plaintiff, Angel LaShell Evans, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her application for supplemental security income ("SSI") under Title XVI of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c). Dkt. No. 20.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 12, 19. For the reasons that follow, the Defendant's motion (Dkt. No. 19) is GRANTED and Plaintiff's motion (Dkt. No. 12) is DENIED.

**BACKGROUND**

On January 28, 2015, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability since September 1, 2009,[1] due to: chronic back pain, chronic pelvic pain, and chronic depression. Tr.[2] 153-158, 182-190. On May 18, 2015, Plaintiff's claim was denied by the SSA at the initial level and she requested review. Tr. 55-64. On May 9, 2017, Plaintiff appeared with her attorney and testified along with a vocational expert ("VE") before Administrative Law Judge, Michael Devlin ("the ALJ"). Tr. 36-54. On October 3, 2017, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act. Tr. 8-35. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on August 29, 2018. Tr. 1-5. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

**LEGAL STANDARD**

**I. District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[1] The ALJ noted that Plaintiff previously filed a claim with the SSA for disability insurance benefits ("DIB") and SSI on August 31, 2011 and was issued an unfavorable decision on June 28, 2013 and the Appeals Council denied review on January 6, 2015. The ALJ explained that because the prior decision is final and binding concerning the period before June 28, 2013, he would only consider the period from June 29, 2013 through October 3, 2017. Tr. 11.
[2] References to "Tr." are to the administrative record in this matter. Dkt. No. 8.

2

substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 22, 2015, the application date. Tr. 13.  At step two, the ALJ found Plaintiff has the following severe impairments:  lumbar degenerative

disc disease; myofascial pain syndrome; chronic abdominal/pelvic pain; asthma; depression; and major depressive disorder.  Tr. 14.  Also, at step two, the ALJ concluded Plaintiff's marijuana use constitutes a non-severe impairment and Plaintiff's alleged fibromyalgia is not a medically determinable impairment.  *Id.*  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 15-18.

Next, the ALJ determined Plaintiff retained the RFC to perform sedentary work.[3]  Tr. 23-35.  Specifically, the ALJ found Plaintiff can occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk up to two hours in an eight hour day; sit about six hours in an eight hour day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffold; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.  Tr. 18.  The ALJ also found Plaintiff can understand, remember, and carry out simple instructions and tasks; can maintain concentration and focus for up to two hours at a time; can occasionally interact with co-workers and supervisors; requires little to no contact with the general public; and is able to work in a low stress work environment (i.e., no supervisory duties, no independent decision making, no strict production quotas, minimal changes in work routine and processes, etc.).  *Id.*

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

5

At step four, the ALJ relied on the VE's testimony and concluded Plaintiff was incapable of performing her past relevant work as a "Fast-Foods Worker" and "Parking-Lot Attendant." Tr. 29-30. At step five the ALJ concluded, based on the VE's testimony in consideration of Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of performing other work that existed in significant numbers in the national economy. Tr. Tr. 30-31. Specifically, the ALJ found Plaintiff could perform the following jobs: "Document Preparer," "Addresser," and "Ampoule Sealer." Tr. 31. Accordingly, the ALJ found Plaintiff was not disabled under the Act from January 22, 2015 through October 3, 2017. *Id.*

## II. Analysis

Plaintiff argues that remand is warranted because the ALJ erred in evaluating the medical opinion evidence by: (1) improperly rejecting two medical opinions from Plaintiff's treating physician; (2) improperly relying on the consultative examiner's opinion; and (3) improperly rejecting two medical opinions from Plaintiff's mental health counselor. Dkt. No. 12 at 1. The Commissioner contends the ALJ's decision should be affirmed where it is free from legal error and is supported by substantial evidence. Dkt. No. 19 at 10. This Court agrees with the Commissioner for the reasons that follow.

### (1) The ALJ properly evaluated Dr. Cox's Opinions.

Under Second Circuit precedent and the applicable Social Security Regulations, an ALJ must follow a two-step procedure in evaluating the medical opinion

of a treating physician. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). First, the ALJ determines whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* If these criteria are satisfied, then the opinion is "entitled to controlling weight." *Id.* If not, then the ALJ proceeds to the second step, determining "how much weight, if any, to give" the opinion. *Id.* Specifically, at step two the ALJ must consider the following factors: "(1)the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (citing *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir.2008) (citing 20 C.F.R. § 404.1527(c)(2))))). The ALJ must provide "good reasons" regarding the weight assigned to a treating physician's medical opinion at both steps. *Id.* at 96. (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2))).

Plaintiff argues the ALJ improperly rejected two medical opinions from Plaintiff's treating physician, John Cox, M.D. ("Dr. Cox"), by failing to consider the factors at step two and failing to provide good reasons in support of the weight he accorded the opinions. Dkt. No. 12 at 18-26. The Commissioner contends the ALJ's decision reflects his consideration of the step two factors and that the ALJ set forth good reasons in support of the weight he accorded the opinions. Dkt. No. 19 at 20-23. This Court agrees with the Commissioner for the reasons that follow.

7

"An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight" to a treating physician's opinion that has not been accorded controlling weight at step two is a "procedural error." *Estrella*, 925 F.3d at 96. Unless the ALJ has "otherwise provided good reasons" for the weight assigned, "[the Court] will be unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth [good] reasons." *Id.* However, if "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed, [the Court] will affirm." *Id.*

On June 4, 2015, and July 4, 2016, Dr. Cox completed "Physical Assessment for Determination of Employability" forms on behalf of Plaintiff for the Monroe County Department of Human Services. Tr. 327-330, 1150-1153. Dr. Cox opined Plaintiff was "permanently disabled" and referred her for SSI due to pain from fibromyalgia, chronic pelvic pain, and chronic low back pain. Tr. 328, 1151. The doctor noted the following physical exam findings in support of the diagnosis: Plaintiff generally appeared in pain with stiff and abnormal gait; tender abdomen; and diffuse musculoskeletal pain and stiffness. Tr. 329-330, 1152-1153. Lastly, Dr. Cox estimated Plaintiff would be "very limited" (1-2 hours) in performing each of the following functions during an eight-hour workday: walk, stand, sit, push, pull, bend, see, hear, speak, and lift/carry. Tr. 330, 1153.

As an initial matter, this Court notes that no deference is owed to the doctor's statement that Plaintiff was "permanently disabled." See Green-Younger v.

8

Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.") (internal quotation omitted). The ultimate finding of whether a claimant is disabled and cannot work is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

The ALJ accorded "some weight" to Dr. Cox's opinions. Tr. 25. The ALJ considered each of the factors necessary to afford Dr. Cox's opinions less-than-controlling weight. Tr. 19-29, *see Estrella*, 925 F.3d at 95-96.

The ALJ addressed "the frequency, length, nature, and extent of treatment" and "whether the doctor is a specialist" by acknowledging Dr. Cox as Plaintiff's primary care provider throughout the relevant period, noting that the doctor treated Plaintiff every month from August 7, 2013, through February 6, 2017. Tr. 19, 21, 25., *see Estrella*, 925 F.3d at 95.

The ALJ found Dr. Cox's opinion that Plaintiff could stand or walk up to two hours, "somewhat consistent" with overall record evidence; primarily Plaintiff's persistent reports of pain to various providers. Tr. 25. However, he explained the remainder of Dr. Cox's opinions were inconsistent with objective evidence of record, including Plaintiff's treatment history with Dr. Cox and objective findings noted by the doctor and other medical providers throughout the relevant period. *Id.*

9

The ALJ considered the "amount of medical evidence supporting the opinion," reviewing Plaintiff's treatment records with Dr. Cox throughout the decision and concluded the doctor's objective findings on examination of Plaintiff did not fully support the doctor's opinions. Tr. 22-29, *see Estrella* 925 F.3d at 95. For example, the ALJ noted Dr. Cox's periodic findings of stiff and slow or antalgic gait; minimal documentation of reduced range of motion in the lumbar spine; sporadic findings of tenderness to palpation; and lumbar tenderness following a fall in January 2016. Tr. 22-24. Further review of the decision confirms the ALJ extensively annotated Dr. Cox's treatment records and supports the ALJ's observation of the doctor's relatively minimal findings on examination of Plaintiff. These objective findings on examination were properly considered by the ALJ in determining the amount of weight to accord to Dr. Cox's opinion. *See Monroe v. Commissioner of Social Security*, 676 Fed. App'x 5, 7 (2d Cir.2017) (ALJ's decision to give less than controlling weight to the treating physician's opinion was proper where the doctor's treatment notes conflicted with his RFC assessment.).

The ALJ also found Dr. Cox's opinion was inconsistent with other substantial evidence in the case record, including minimal findings observed by other medical providers like Plaintiff's orthopedist, John Orsini, M.D. ("Dr. Orsini"). Tr. 25, *See Estrella*, 925 F.3d at 96. The ALJ detailed Dr. Orsini's findings upon examination of Plaintiff including her slow but non-antalgic gait, normal posture, ability to get up and out of her chair without difficulty, ability to get onto the examination table without difficulty, lack of atrophy of the extremities, no back pain with hip range of motion testing, intact

motor strength in all domains, normal sensation, and symmetric reflexes. Tr. 22. The ALJ further observed that the only significant findings noted by Dr. Orsini included Plaintiff's giveaway weakness in the distal lower extremities and relatively minimal reductions in lumbar range of motion, limited by subjective pain. Tr. 25. (referencing Tr. 1104-1122). Lastly, the ALJ referenced Dr. Orsini's conclusion that Plaintiff had exaggerated pain responses to even very light touch and that Plaintiff failed to complete the MRI test Dr. Orsini ordered. Tr. 24.

Additionally, the ALJ noted Plaintiff's records from treating gynecologists and obstetricians revealed relatively minimal findings, generally consisting of periodic tenderness to the abdomen. Tr. 25. The ALJ observed that although Plaintiff's initial treatment for her abdominopelvic pain and myofascial pain syndrome involved prescriptions for pain medications and recommendations for pelvic floor physical therapy; there was no evidence Plaintiff ever completed or attempted physical therapy as directed and Plaintiff's pain medication prescriptions were ceased by her providers in 2016, due to Plaintiff's noncompliance with pain management control. Tr. 23, 25.

For these reasons, this Court concludes that the ALJ adequately considered the *Burgess* factors and provided "good reasons" for according less-than-controlling weight to the opinions of Dr. Cox. *See, Halloran*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not

11

consistent with other substantial evidence in the record, such as the opinions of other medical experts).

**(2) The ALJ correctly considered Dr. Toor's Opinion**

Plaintiff also contends the ALJ erred in according significant weight to the opinion of Harbinder Toor, M.D. ("Dr. Toor"), who performed a consultative examination of Plaintiff on April 28, 2015. Dkt. No. 12 at 26-27. Specifically, Plaintiff argues the ALJ should not have relied on Dr. Toor's opinion as it is vague and based upon a single examination of Plaintiff. *Id.* The Commissioner asserts the ALJ's weighing of Dr. Toor's opinion is supported by substantial evidence. Dkt. No. 19 at 23-26.

Dr. Toor opined Plaintiff has moderate limitations to sitting, walking, and standing a long time; moderate to mild limitation in bending; pain interferes with her physical routine; and she should avoid irritants or other factors which can precipitate asthma. Tr. 326.

Here, the ALJ explained in his decision that he accorded Dr. Toor's opinion significant weight because it is generally consistent with the overall medical evidence of record, including treatment records from Plaintiff's gynecologists, obstetricians and primary care physician, Dr. Cox. Tr. 24. The ALJ referenced some of Dr. Toor's findings on examination including: moderate pain, normal gait, no difficulty walking on heels and toes, full motor strength in the extremities, no muscle atrophy, no sensory deficits, full grip strength of the hands and fingers, no use of any assistive

devices; but reductions in lumbar flexion and lateral rotation.  *Id.*  Further, the ALJ noted Dr. Toor's report that Plaintiff refused to lie down on the examination table and declined straight leg testing.  *Id.*

Contrary to Plaintiff's assertion, Dr. Toor's opinion is not so vague as to render it useless.  "The use of phrases such as 'moderate' or 'mild' by a consultative examiner does not automatically render the opinion impermissibly vague."  Rosenbauer v. Astrue, 2014 WL 4187210, *16 (W.D.N.Y. 2014) (collecting cases).  "Instead, when those opinions are based on clinical findings and on an examination of the claimant, the conclusion can serve as an adequate basis for the ALJ's ultimate conclusion."  *Id.*  Here, Dr. Toor based his opinion on his interview and examination of Plaintiff.  Tr. 322-26.  Accordingly, this Court finds the ALJ properly considered consultative examiner Dr. Toor's opinion.

### (3) The ALJ properly considered medical opinions from Plaintiff's mental health counselor.

Lastly, Plaintiff contends the ALJ erred in discounting two opinions provided by Licensed Clinical Social Worker, Linda Harrison, rendering his mental RFC finding unsupported by substantial evidence.  Dkt. No. 12 at 27.  The Commissioner argues the ALJ's evaluation of Ms. Harrison's opinion and the weight he accorded it are supported by substantial evidence.  Dkt. No. 19 at 27.  This Court agrees.

As an initial matter, this Court notes that licensed clinical social workers are not considered acceptable "medical sources" and are therefore not entitled to

13

controlling weight. *Conlin v. Colvin*, 111 F.Supp 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin*, 80 F.Supp. 3d 480, 493 (W.D.N.Y. 2015)). However, an ALJ may not disregard a medical opinion solely because the opinion is not from an acceptable medical source. *Allen v. Comm'r of Soc. Sec.*, 351 F.Supp 3d 327, 335-36 (W.D.N.Y. 2018). Although the ALJ is "free to decide that opinions from 'other sources'…. are entitled to little or no weight, those decisions should be explained." *Piatt*, 80 F.Supp.3d at 493 (quoting another source).

On July 7, 2016, Ms. Harrison completed a Psychological Assessment for Determination of Employability form on behalf of Plaintiff for the Monroe County Department of Human Services. Tr. 1155-1159. Ms. Harrison indicated Depression as Plaintiff's chief complaint and noted that while she met with Plaintiff on a monthly basis for counseling, she did not prescribe any medications for her. Tr. 1155-56. Ms. Harrison opined Plaintiff would be moderately limited (10-25% of the time) with the following areas of functioning due to her depression: capacity to perform simple and complex tasks independently; capacity to maintain attention and concentration; and capacity to regularly adhere to a routine and maintain a schedule. Tr. 1157. Ms. Harrison also opined Plaintiff did not demonstrate the capacity to use public transportation. *Id.* Lastly, Ms. Harrison opined Plaintiff would be unable to participate in any activities outside of treatment, for six months. *Id.*

On April 12, 2017, Ms. Harrison completed a Medical Opinion Statement on behalf of Plaintiff. Tr. 1142-48. Here, she described bi-weekly treatment of Plaintiff

14

for chronic Post Traumatic Stress Syndrome ("PTSD") and Major Depressive Disorder, noting Plaintiff "has identified strengths and learned to set some limits within her relationships, [but] remains 'stuck' in trauma from past." Tr. 1142. Ms. Harrison noted Plaintiff's tolerance for stressors is minimal and that she only leaves her home to attend appointments. *Id.* She opined Plaintiff would be unable to: travel to unfamiliar places or use public transportation; deal with normal work stress; be aware of normal hazards and take appropriate precautions; set realistic goals or make plans independently of others; but could interact appropriately with the general public for twenty percent of an eight-hour workday; and would be off-task for more than thirty percent of a typical workday Tr. 1145.

In assessing Plaintiff's mental RFC, the ALJ acknowledged Plaintiff's psychotherapy sessions with Ms. Harrison, with mental status findings including abnormalities in mood and affect, with occasional abnormalities in thought content and process. Tr. 26. Here, the ALJ observed that despite these abnormalities, Ms. Harrison consistently noted cooperative attitude, unremarkable speech, and intact concentration, memory, insight, impulse control, and judgment. *Id.* The ALJ also observed Plaintiff's course of treatment revealed her subjective report of improvements, including her increased ability to set limits in her interpersonal relationships with family members; and her reports of participating in activities such as taking a cruise in January 2016, hosting Thanksgiving dinner, and spending time with friends. Tr. 26-27.

The ALJ accorded "some weight" to Ms. Harrison's opinion, explaining that the limitations with interacting with the public and performing complex tasks are generally consistent with the overall record. Tr. 27. Next the ALJ explained that the remainder of the opinions, particularly time off-task, ability to deal with normal work stress, use public transportation, and awareness of normal work hazards; are generally inconsistent with the evidence of record. *Id.* Here, the ALJ noted relatively minimal mental status findings by Ms. Harrison in her contemporaneous treatment notes; no remarkable findings by Dr. Cox while he prescribed Plaintiff Cymbalta for physical pain and depression; and Ms. Harrison's opinion that Plaintiff's limitations were expected to last for only six months. *Id.*

The ALJ also considered the opinion of Consultative Examiner, Christine Ransom, PhD ("Dr. Ransom"), who examined Plaintiff for an Adult Psychiatric Evaluation in April 2015. Tr. 316. Dr. Ransom reviewed Plaintiff's psychiatric history including a past suicide attempt and hospitalization in 1996 and indicated Plaintiff had been treated for the last three years at Strong Outpatient with one to one counseling for depression. Tr. 316. Dr. Ransom opined Plaintiff would have no limitations with: following and understanding simple directions and instructions; performing tasks independently; maintaining attention and concentration for simple tasks; maintaining a simple regular schedule; and learning new simple tasks. Tr. 318. Dr. Ransom also opined Plaintiff would have mild difficulty with performing complex tasks, relating adequately with others, and appropriately dealing with stress. *Id.* The doctor noted that

Plaintiff's areas of difficulty are secondary to major depressive disorder, currently mild, and will not significantly interfere with Plaintiff's ability to function on a daily basis. *Id.*

The ALJ accorded "some weight" to Dr. Ransom's opinion. Tr. 28. Here, the ALJ noted that Dr. Ransom's mental status examination of Plaintiff was unremarkable except for mildly dysphoric mood and affect; and that Plaintiff reported she was able to care for her two children, manage money, do light chores, with some assistance from her son with heavier chores. *Id.* The ALJ found that some limitations assessed by Dr. Ransom were generally consistent with the overall evidence of record, but that objective evidence substantiated slightly greater restrictions. *Id.* Accordingly, the ALJ explained that he limited Plaintiff to simple instructions and tasks, occasional interaction with coworkers and supervisors, little to no contact with the public, and a low stress work environment. *Id.*

Lastly, the ALJ also concluded Plaintiff's allegations of the nature, intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical signs, laboratory findings and/or other evidence of record—a finding Plaintiff does not challenge. Tr. 28.

Therefore, this Court finds the ALJ properly considered Ms. Harrison's opinions in evaluating Plaintiff's mental RFC and that his decision to accord them some weight is supported by substantial evidence. *See Matta v. Astrue,* 508 F. App'x. 53, 56

(2d Cir. 2013) (summary order) (An ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision).

## CONCLUSION

For these reasons, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 19) is GRANTED.  Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
              March 26, 2020

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**